# BROWN v. ALLAN E. WALKER & CO.

Court of Appeals of District of Columbia.
Submitted April 9, 1928. Decided
May 7, 1928.

No. 4667.

Judgment ☰866(2)—Judgment of municipal court, docketed in Supreme Court, held enforceable for period of 12 years from date it was docketed (Code §§ 29, 1212, 1213).

Under Code, §§ 1212, 1213, judgment of municipal court, after being docketed in Supreme Court of the District pursuant to section 29, remained enforceable 12 years from the date on which it was docketed; provision of section 1212 for such period of limitation from date when execution might first be issued thereon signifying date when execution might first have been issued on judgment as and when docketed in Supreme Court.

Appeal from the Supreme Court of the District of Columbia.

Action by Allan E. Walker & Co. against George C. Brown. Judgment for plaintiff, and from a judgment of fiat, after issuance of writ of scire facias, defendant appeals. Affirmed.

Chas. Linkins, of Washington, D. C., for appellant.

J. L. Smith and J. P. Jones, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This appeal presents a question of law arising upon conceded facts.

On August 27, 1912, Allan E. Walker & Co., recovered a judgment against George C. Brown in the sum of $241.85 by consideration of the municipal court of the District of Columbia. On February 23, 1915, a writ of execution was issued thereon, and was afterwards returned unsatisfied, and indorsed "No personal property found whereon to levy." On February 26, 1915, a certified copy of the judgment was docketed in the office of the clerk of the Supreme Court of the District, under section 29, D. C. Code. No writ of any kind was afterwards issued upon the judgment until on January 24, 1927, when a writ of scire facias was issued and served upon the judgment debtor. The latter filed a general demurrer, which was overruled; and, the judgment debtor electing to stand upon the demurrer, a judgment of fiat was rendered. This appeal was then taken.

It will be observed that the writ of scire facias was issued at a time more than 12

26 F.(2d)—35

years after the rendition of the judgment in the municipal court, but less than 12 years after the docketing thereof in the Supreme Court. It is contended by appellant that the right of appellee to sue out a writ of scire facias was limited by sections 1212 and 1213, D. C. Code, to 12 years after the rendition of the judgment in the municipal court, and that, inasmuch as appellee had failed to proceed within that time, his remedy was barred. It is contended, however, by appellee, that the period of 12 years prescribed by the Code did not begin to run until the time when the judgment was docketed in the Supreme Court, and that the writ was not barred, since it was issued within 12 years after that time.

It is provided by section 12, D. C. Code, as amended (Act March 3, 1921, § 6, 41 Stat. 1311), that judgments of the municipal court shall remain in force for 6 years, and no more, after rendition, unless docketed in the Supreme Court of the District, as provided by section 29, D. C. Code. The latter section provides that after the rendition of judgment by the Municipal Court, and a return of execution thereon, indorsed "No personal property found whereon to levy," the judgment creditor may file in the clerk's office of the Supreme Court of the District a certified copy of the judgment, to be docketed in the docket of law causes therein, and when so docketed the judgment shall have the same force and effect as if it had been a judgment of the Supreme Court of the District.

Sections 1212 and 1213, D. C. Code, provide that a final judgment at common law for the payment of money, rendered in the Supreme Court of the District, and every judgment of the municipal court certified to and docketed in the clerk's office of the Supreme Court as aforesaid, shall be good and enforceable by execution for the period of 12 years only, from the date when an execution might first be issued thereon, or from the date of the last revival thereof under scire facias, subject to certain exceptions not material herein, and that at the expiration of the period of 12 years as aforesaid the judgment shall cease to have any operation or effect, and no action may be brought on the same, nor any scire facias or execution thereafter issued upon it.

The decision upon the present issue depends upon the interpretation to be given to the following clause of section 1212, supra, to wit: "Every final judgment at common law * * * for the payment of money rendered in the Supreme Court of the District, and every judgment of a justice of the

peace [municipal court] certified to and docketed in the clerk's office of the said Supreme Court, as herein elsewhere directed, shall be good and enforceable, by an execution issued thereon, for the period of twelve years only from the date when an execution might first be issued thereon. * * * " It is our opinion that the foregoing clause, "from the date when an execution might first be issued thereon," signifies the date when an execution might first have been issued upon the judgment as and when docketed in the Supreme Court, and has no reference to the date when execution might first have been issued upon the judgment in the Municipal Court. The manifest legislative purpose of the enactment was to put such judgments, when docketed, upon a parity with judgments of the Supreme Court rendered upon the same date. The remedies thus provided for the judgments of the municipal court first arise when they are docketed in the Supreme Court, and they remain effective as thus enlarged for the period allotted to judgments of the Supreme Court.

Various court decisions are cited in the briefs, but the statutes construed therein are not identical with ours, and the decisions accordingly are of doubtful authority.

In Burr v. Engles, 24 Ark. 283, it was held that, where a transcript of a judgment of a justice of the peace is filed in the circuit court and entered in the judgment docket, the statute of limitations commences to run from the time of such filing and entry, and not from the date of the justice's finding. The governing statute authorized the filing of the transcript, and provided that "every such judgment, from the time of filing the transcript thereof, shall be a lien on the real estate of the defendant in the county, to the same extent as a judgment of the circuit court of the same county, and shall be carried into execution in the same manner and with like effect, as the judgments of such circuit court. * * * " The court observed that "the filing of the transcript, we have no doubt, was intended by the legislature to be in the nature of a judgment of a circuit court, and took effect from the day of its filing, and was governed by the same limitation that judgments of the circuit court would be governed by. * * * "

In Green v. Mann, 19 App. D. C. 243, this court was called upon to apply the provisions of section 1022, R. S. D. C., which authorized the docketing of judgments of justices of the peace in the Supreme Court of the District of Columbia, and provides that, "when so docketed, the force and effect of the judgment shall be the same, as to lien and execution, as if it had been a judgment of the Supreme Court."

Chief Justice Alvey, when delivering the opinion, spoke in part as follows:

"It is very true that, as a general principle, a scire facias to revive a judgment, being founded upon matter of record, can only issue from the court where the record is. It is strictly a judicial writ, issued in a proceeding to execution. But it was certainly competent for Congress, by the statute under consideration, to give force and effect to the transcript and the registry thereof upon the docket of the court, as if it were in fact and reality a judgment of record in the Supreme Court of the District. And this is what we think was in effect done. The judgment of the justice of the peace was made as and placed upon the footing of a judgment of the Supreme Court, upon the filing and docketing the transcript as directed by the statute. This has been the construction of a similar provision in the statutes of several states, in regard to the filing and docketing of transcripts of judgments of justices of the peace in courts of record. After they were thus filed and docketed they were treated and proceeded on as were other judgments of record in the courts. Jackson v. Jones, 9 Cow. 182, 191; Jackson v. Tuttle, 9 Cow. 233, 238; Brannan v. Kelley, 8 Serg. & R. [Pa.] 479, 480; [Green v. Leymer] 3 Watts, 381–383; [Means v. Presbyterian Church] 3 Penn. Rep. 98."

In our opinion, the judgment of the lower court was right; it is accordingly affirmed, with costs.